FILED
2007 Feb-06 PM 02:27
U.S. DISTRICT COURT
N.D. OF ALABAMA

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF ALABAMA
WESTERN DIVISION

HUMPHRIES KELLEY, *et al.*,       ]
                                  ]
    Plaintiffs,                ]
                                  ]
    vs.                        ] CV-04-CO-00603-W
                                  ]
CITY OF TUSCALOOSA, *et al.*,     ]
                                  ]
    Defendants.                ]

MEMORANDUM OF OPINION

I.    Introduction.

The Court has for consideration defendant City of Tuscaloosa's ("the City") Motion for Summary Judgment, which was filed on November 17, 2006. (Doc. 162.) The plaintiffs in this case, Humphries Kelley and Kelley Contracting, Inc. ("KCI"), filed their complaint on March 23, 2004, asserting claims based upon breach of contract, violations of the Equal Protection Clause of the Fourteenth Amendment, discrimination under Title VI of the Civil Rights Act of 1964, 42 U.S.C. § 2000d, and defamation. (Doc. 1.) Pursuant to the parties' stipulation of dismissal (Doc. 160), filed on November 11, 2006, this Court dismissed Count Two of Plaintiffs' amended

complaint against the City, which included claims based upon racial discrimination in violation of the Fourteenth Amendment to the United States Constitution and Title VI[1] of the Civil Rights Act of 1964.  (Doc. 161.)  On August 27, 2004, the City filed its answer to the plaintiffs' Amended Complaint along with a counterclaim against Kelley Contracting, Inc. ("KCI") and American Contractor Indemnity Company ("ACIC"), which it contemporaneously filed a motion to add as a third-party to this case so that it may seek to enforce ACIC's obligations under the performance bond that it issued to KCI.  (Doc. 44.)  The City's counterclaim against KCI asserts a claim for breach of contract.  *Id.*  Therefore, the only claims remaining in this case are Plaintiffs' claims against the City for breach of contract (Count One) and defamation (Count Three) and the City's counterclaim against Plaintiffs for breach of contract.  The issues raised in the City's motion have been briefed by the parties and are now ripe for decision.   Upon full

---

[1]The parties' Stipulation of Dismissal (Doc. 160) indicates that Count Two includes claims based upon Title VII of the Civil Rights Act of 1964, but both the Complaint (Doc. 1) and the Amended Complaint (Doc. 34) only include claims for violations of Title VI of the Civil Rights Act of 1964.  This discrepancy is immaterial as the parties stipulated to and this Court ordered the dismissal of Count Two in its entirety.

consideration of the legal arguments and evidence presented, the City's motion is due to be GRANTED.

II.   Facts.[2]

This case concerns the rehabilitation construction of a pool building in "Phase 1 of the Freeman Park Pool Project" ("the Project") in Tuscaloosa, Alabama.  On May 19, 2002, the City advertised the Project and invited bids. KCI was the lowest bidder and was tentatively awarded a contract with the City on June 13, 2002, in the amount of $475,620.00.  The written contract ("the Contract") was entered into by KCI and the City on July 11, 2002.  It provides that construction was to commence fifteen calendar days from the date to be specified in a written "Notice to Proceed" of the engineer/architect or thirty days from the date of execution of the Contract if no notice is issued, and it was to be fully completed one-hundred twenty calendar days thereafter.  On July 11, 2002, the City issued a Notice to

---

[2]The facts set out in this opinion are gleaned from the parties' submissions of facts claimed to be undisputed, the facts submitted in the parties' Joint Status Report, and the Court's own examination of the evidentiary record.  All reasonable doubts about the facts have been resolved in favor of the nonmoving party.  *See Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d 1220, 1224 (11th Cir. 2002).  These are the "facts" for summary judgment purposes only.  They may not be the actual facts.  *See Cox v. Adm'r U.S. Steel & Carnegie Pension Fund*, 17 F.3d 1386, 1400 (11th Cir. 1994).

Proceed to KCI who then took the notice to the Tuscaloosa Department of Transportation ("TDOT") for approval.   TDOT rejected the plans as incomplete and not in compliance with federal, state, and local codes and standards.   Furthermore, the plans did not contain the required topographical survey.  On July 24, 2002, KCI accepted the City's second Notice to Proceed, which included the proper drawings and specifications. This would have made the original completion date of the Project December 4, 2002.  By counting the completion time from the date of the second notice, the parties agree that the City accommodated KCI for the delays caused by the incorrect first notice.

In August of 2002, KCI submitted samples of masonry block colors for selection by the City.  On August 22, 2002, the City selected the blocks and issued approval to purchase the units.  The very next day, KCI issued a written purchase order for the block color selected by the City.  The block supplier, Wilcutt Block Company, immediately notified KCI that the blocks could not be delivered immediately, and they eventually caused a fifty day delay in the construction of the Project.  On October 3, 2002, the blocks arrived, but because of inclement weather the bricklayers were not able to

complete their work until January 20, 2003.  The City issued Change Orders at KCI's request to accommodate the delay, but Plaintiffs contend, as explained below, that the orders did not fully accommodate the delays that occurred.

On February 12, 2003, the electrical subcontractor requested an inspection so that the power could be turned on to start water, sewer, and electrical testing to meet the requirements for substantial completion.  At that time, the building was inspected, approved, and released by the City for electrical power.  On February 17, 2003, KCI paid the fees for temporary power, but electrical service was not immediately made available to the site.  KCI's project manager, Norman Jamison, and the electrical contractor contacted Joe Lumpkin of Alabama Power to inquire about the lack of electrical service to the Project.  Mr. Lumpkin informed Mr. Jamison that he had tried to obtain the necessary information to run a new line to the Project for six months.  Mr. Lumpkin stated that he had contacted Randy Smith, whom Plaintiffs characterize as the "City project manager," who informed him that he was in possession of the needed information but that

it was scattered all over his office.  The information was not delivered, and electrical power was not available to the Project for thirty days.

On May 16, 2003, the Project's architect, William Sims, issued a Notice of Substantial Completion to the City, and, subsequently, a Certificate of Occupancy was issued by the City Inspections Department.  Sims has explained that "substantial completion" did not mean that a set percentage of the Project had been completed, just that the building was to the point the City could issue a Certificate of Occupancy and use the building, although every item on the punch list had not been completed.  The parties agree that a Certificate of Occupancy could be issued before KCI had completed all punch list items, and KCI had to complete all such items before it was entitled to full payment under the Contract.

As of the date the City terminated the Contract in August of 2003, KCI had not completed the punch list items, rather it was "right in the middle of" completing them.  It is the City's contention that the Project was not completed on time, and, therefore, it did not pay KCI the balance of the amounts owed under the Contract.  The City also assessed liquidated damages against KCI for the alleged delays in construction of the Project.

On April 30, 2003, an article was published in the *Tuscaloosa News* entitled "Council Ends Contract with Kelley Contracting."  According to Plaintiffs, it reads in its entirety:

> The City Council on Tuesday voted 4-2 to terminate the city's contract with Kelley Contracting Inc. of West Point, Miss., for the Freeman Park Pool Building Project.
>
> Councilmen James Cunningham and Harrison Taylor voted against terminating Kelley, saying the company encountered problems as most other companies on projects do.
>
> The council hired Kelley in June 2002 to construct a 3,800-square-foot pool house and multipurpose building as part of renovations to A. L. Freeman Park in West Tuscaloosa. Under the agreement with the city, Kelley would have been paid $475,620 if it completed the project by March 19 or within 120 days.
>
> Helen Ball, manager of the city's community development program, said the city extended the date three times, a total of fifteen days.
>
> However, she said the city decided to end its relationship with the company after it failed to renew its general liability insurance, a requirement on city projects. "They've been off the job for a week because their insurance was not renewed," she said. "They're trying to obtain the insurance right now."
>
> But Ball said she thought the city would have an auction to finish the partially completed project.

> Under the contract, the city can deduct $200 from the
> original contract amount for every day Kelley failed to
> complete the project.

(Doc. 167, pp. 15-16.)  Plaintiffs contend that this article caused KCI to lose

its subcontractors, which led to further delays.  On May 26, 2003, KCI wrote

to the City that it was trying to convince its subcontractors and suppliers

that it had not lost its contract.  In the letter, KCI admitted that the work

of the subcontractors was not yet complete and that the estimated date of

completion of the Project was now June 15, 2003.

III.   Summary Judgment Standard.

Summary judgment is proper "if the pleadings, depositions, answers

to interrogatories, and admissions on file, together with the affidavits, if

any, show that there is no genuine issue as to any material fact and that the

moving party is entitled to a judgment as a matter of law."  Fed. R. Civ. P.

56(c).  The party moving for summary judgment "always bears the initial

responsibility of informing the district court of the basis for its motion, and

identifying those portions of [the evidence] which it believes demonstrate

the absence of a genuine issue of material fact."  *Celotex Corp. v. Catrett*,

477 U.S. 317, 323 (1986).  The movant can meet this burden by presenting

evidence showing that there is no genuine dispute of material fact, or by

showing that the nonmoving party has failed to present evidence in support

of some element of its case on which it bears the ultimate burden of proof.

*Id.* at 322-23.  In evaluating the arguments of the movant, the court must

view the evidence in the light most favorable to the nonmoving party.  *Mize*

*v. Jefferson City Bd. of Educ.*, 93 F.3d 739, 742 (11th Cir. 1996).

Once the moving party has met his burden, Rule 56(e) "requires the

nonmoving party to go beyond the pleadings and by [his] own affidavits, or

by the 'depositions, answers to interrogatories, and admissions on file,'

designate 'specific facts showing that there is a genuine issue for trial.'"

*Celotex*, 477 U.S. at 324 (quoting Fed. R. Civ. P. 56(e)).  "A factual dispute

is genuine only if a 'reasonable jury could return a verdict for the

nonmoving party.'"  *Info. Sys. & Networks Corp. v. City of Atlanta*, 281 F.3d

1220, 1224 (11th Cir. 2002) (quoting *United States v. Four Parcels of Real*

*Property*, 941 F.2d 1428, 1437 (11th Cir. 1991)).

IV.   Discussion.

The City has moved for summary judgment on both claims asserted

against it by Plaintiffs, as well as its counterclaim against KCI.  (Doc. 162.)

The City argues that summary judgment should be granted in its favor with regards to Plaintiffs' claim for breach of contract because it was justified in terminating the Contract without making final payment. *Id*. The City believes that it is entitled to summary judgment as to Plaintiffs' defamation claim due to the fact that a municipality is "legally incapable" of acting with actual malice, a necessary element of a defamation claim against a public figure, the statements attributed to the City were true, and the statements were not defamatory as a matter of law. *Id*. Finally, the City has moved for summary judgment with respect to its counterclaim against KCI for breach of contract based upon KCI's failure to complete the Project. *Id*.

   A.   Breach of Contract.

Plaintiffs have alleged claims against the City for breach of contract based upon the City's refusal to pay the balance of the Contract after KCI had "obtained substantial completion and the Certificate of Occupancy." (Doc. 156, p. 73.)  KCI asserts that it is entitled to actual incidental, consequential, and liquidated damages resulting from the City's breach. *Id*. It is the City's position that Plaintiffs were at fault in failing to complete the

Project and that the City was fully justified in terminating the Contract, withholding final payment, and imposing liquidated damages.  (Doc. 162, p. 2.)

> 1.    Delays in Completion of the Project.

KCI asserts that the following delays support its claim for breach of contract: (1) the delay caused by the City's issuance of two Notices to Proceed on July 11, 2002, and July 24, 2002; (2) the delay caused by manufacturing and delivery delays by the masonry block supplier; (3) the delay caused by the fact that permanent electrical power was not obtained for the site until April 2003; and (4) unspecified "delays" caused by the City and/or "weather related delays."  (Docs. 156, pp. 69-73; 162, pp. 1-2.)  In the following sections, the Court will examine each of Plaintiffs' proffered reasons for the delay as well as the City's contention that no Change Orders were requested due to delays allegedly caused by the City.

> a.    Notices to Proceed.

After KCI was awarded the Contract, it could not commence work on the Project until the City issued a Notice to Proceed.  In this case, the City issued two such notices, but it was the second notice that triggered the one-

hundred twenty day completion time.  (Doc. 156, p. 6.)  The City does not dispute the fact that the first notice was deficient because KCI was not provided with the required topographical survey.  Plaintiffs allege that even though the City extended the completion date by thirteen days because of its error, KCI had already been impacted by the delay.   According to Plaintiffs, KCI mobilized its workforce in preparation of the original date of commencement, and, therefore, sustained damages by having to wait until the second notice was issued.  (Doc. 167, p. 9.)

Plaintiffs have stipulated that the City accommodated them for the delay caused by the first Notice to Proceed by counting the one-hundred twenty days from the date of the second notice.  (Doc. 156, p. 6.)  Plaintiffs also agree that "there was nothing in the contract that prohibited the City from issuing the second notice to proceed; the fault in that issue according to KCI was with Fitts (the architect), not the City." *Id.* at 40.  Finally, as the City has pointed out, the Contract contains an indemnity provision requiring KCI to release and indemnify the City for any "errors in or omissions of" the plans and specifications of the Project, such as the omitted topographical map.  *Id.* at 53.  Based upon the language of the Contract and Plaintiffs'

own statements and stipulations, it does not appear that KCI was prejudiced by the City's issuance of the second Notice to Proceed.

        b.    Masonry Blocks.

KCI was contractually obligated to make submittals of materials to be utilized in the construction of the Project.  (Doc. 156, p. 2.)  A submittal is made when a contractor submits materials or other products that he believes meet the specifications of the contract to the architect.  *Id*.  KCI was responsible for choosing the supplier from which to make submittals, and it made submittals for masonry blocks from one supplier, Wilcutt Block Company.  *Id*. at 3.  The City's project oversight committee was responsible for choosing the color of the blocks from KCI's submittals.  *Id*.

On July 25, 2002, the architect informed KCI that the submittals for masonry blocks did not meet the contract requirements for samples and did not contain the full range of color selections.  *Id*. at 7.  The masonry block submittal was not approved until August 21, 2002, they were ordered by KCI two days later, and they started to arrive at the Project site on October 9, 2002, when their installation began.  *Id*. at 10, 15, 16.  Even though the delivery date was off by only five days, the City granted a Change Order that

extended the time for completion of the Project by six weeks.  *Id.* at 16, 18.

In their response to the City's motion for summary judgment, Plaintiffs state

that the late delivery of the blocks caused a fifty day delay (Doc. 167, p.

11.); however, the Change Order that was granted by the City only

requested a six week extension.  (Jamison Depo., Exhibit 9.)  KCI followed

the proper procedure for requesting an extension based on the delay caused

by the masonry blocks, and the City granted its request.  Plaintiffs simply

cannot claim that KCI was prejudiced by the City's actions regarding the

delay caused by the delivery and installation of the blocks because it

granted KCI's request for an extension.

c.    Electrical Power.

Plaintiffs assert that the lack of permanent electrical power impacted

KCI's ability to complete the Project on time.  (Doc. 167, p. 11.)  KCI had

temporary power to the Project site, but it was only sufficient to operate

power tools, such as skill saws and drills.  *Id.*  While admitting that it was

KCI's responsibility to pay the deposit for power at the site, Plaintiffs argue

that because it was the contractor for only one phase of a three-phase

project at Freeman Park, KCI could not have been responsible for tying in

permanent power to the street.  *Id*.  Plaintiffs also admit that KCI did not request a Change Order because it believed that the lack of power was the fault of the project engineer, Randy Smith, who was hired by the architect. *Id*. at 13.  However, Plaintiffs allege that it was "[t]he failure of the City to ensure the power load was on the streets."  *Id*.  There is no evidence that Randy Smith was either employed by the City or worked as an agent for the City;[3] therefore, Plaintiffs have attempted to blame two different people for the lack of permanent power to the Project while KCI failed to request a Change Order based upon the delay.

The Contract states: "Unless otherwise stipulated, the Contractor shall provide and pay for all materials, water, heating, lighting, fuel, power, transportation, machinery, appliances, telephone, sanitary facilities, temporary facilities and other facilities and incidentals necessary for the execution and completion of the Project."  (Doc. 156, p. 59.)  The City avers

---

[3]In fact, the evidence points to the contrary.  R.H. Smith and Associate was retained by Fitts to perform engineering work on the Project.  (Doc. 156, p. 39.)  Fitts contracted with the Tuscaloosa Parks and Recreation Authority to perform professional design work and services for the Project.  *Id*. at 4.  Fitts did not have a contract with the City, and the City was not a party to the contract between Fitts and the Tuscaloosa Parks and Recreation Authority.

that Plaintiffs have not proffered any evidence that there was a stipulation contrary to KCI's obligation to obtain all power to the Project.  (Doc. 167, p. 21.)  The Contract specifications made it KCI's obligation to "arrange" for electrical utility service, "verify" locations and connections for electrical service, and pay all charges, including the deposit, for a permanent power meter.  (Doc. 156, p. 4.)  The City correctly asserts that even though Plaintiffs testified repeatedly at their depositions that it was the obligation of the City to obtain permanent electrical power, their oral statements contradict the written contract, and, therefore, cannot be considered as evidence.  *See Lake Martin/Alabama Power Licensee Ass'n, Inc. v. Alabama Power Co., Inc.*, 601 So. 2d 942, 945 (Ala. 1992) (holding that parol evidence will "not be received to explain, contradict, vary, add to, or subtract from the express terms of the written contract."); *see also Southern Stone Co., Inc. v. Singer*, 665 F. 2d 698 (11th Cir. 1982) (stating that the parol evidence rule is a substantive rule, not a rule of evidence, and, therefore, state law applies).  Defendants also point the Court's attention to the fact that KCI did not attempt to obtain power until February 17, 2003, over six months after the Project was started.  (Doc. 162, p. 20.)

Therefore, even if Mr. Smith was the cause of the delay, he is not, and never was, an agent or employee of the City.  Plaintiffs have not provided the Court with any evidence that the City was responsible for obtaining or delaying the installation of permanent electrical power to the Project site.

        d.    Change Orders.

The Contract set out in detail the procedures that were to be followed in the event KCI was delayed in construction of the Project.  If KCI needed an extension of time, it was required to submit a written request for a Change Order granting the extension.  Such a request was required to be made by KCI within ten days of the occurrence underlying the factual basis for the delay.  The City notes that during the course of the Project, KCI made three requests for Change Orders, each of which was granted by the City.  The first order extended the completion time by six weeks because of delivery problems with the masonry block.  (Doc. 156, p. 18.)  The second Change Order was based upon the fact that the supplier of the metal roofing had not met the required time for delivery, and the City granted KCI's request for an additional six week extension.  (Jamison Depo., Exhibits 10 & 11.)  The third, and final, order extended the completion date by three

weeks due to the simple request that KCI needed more time in order to complete the Project due to "delays in the delivery of materials from suppliers and inclement weather . . . ."  *Id.* at Exhibit 12.

Plaintiffs do not contend that KCI requested any Change Orders other than the three cited by the City.  No Change Order was requested prior to October 20, 2002, the date the first order was submitted, based upon the two Notices to Proceed issued by the City in July of that year.  There were no further Change Orders requested based upon the late delivery of the masonry block or for bad weather delays that were not covered by the orders that were already granted.  Also, Plaintiffs agree that KCI did not request an extension based upon the lack of electrical power to the site. (Doc. 156, p. 40.)  Because all three of KCI's requested Change Orders were granted by the City, Plaintiffs cannot assert, in good faith, that the City prevented KCI from completing the Project in a timely manner.  There is simply no evidence before the Court that the City did not attempt to accommodate KCI with regards to the delays it encountered or that the delays were the fault of the City.

2.    The City's Termination of the Contract and Refusal to Make Final Payment.

The City argues that Plaintiffs have not shown that KCI performed all conditions precedent to trigger the City's obligation to make final payment, "the primary issue being that plaintiffs never completed the project even after being granted 15 weeks extension of time and working for more than a year on a project that was originally required to be completed in 120 days." (Doc. 162, p. 5.)  A breach of contract "occurs upon a party's failure to do a particular thing that he has agreed to do." *Gray v. Reynolds*, 553 So. 2d 79, 82 (Ala. 1989) (citing *Seybold v. Magnolia Land Co.*, 376 So. 2d 1083 (Ala. 1979)).   However, "[c]ourts should not enforce an agreement where the party seeking enforcement has failed to perform his part of the agreement." *Id*. (citing *Smith v. Clark*, 341 So. 2d 720 (Ala. 1977)).  The City contends that it is excused from paying the balance remaining under the Contract and justified in imposing liquidated damages based upon KCI's failure to timely perform its obligations.  (Doc. 162, p. 5.)  In support of its argument, the City asserts: (a) it had a contractual right to terminate the contract and impose liquidated damages; (b) KCI overstepped the time for

completion; (c) KCI subcontracted for seventy-five percent of the work while the Contract allowed for a maximum of fifty percent to be subcontracted; (d) KCI never submitted "as-built" drawings of the Project, which was a prerequisite to final payment; (e) KCI never advertised completion of the Project as required by State law and the Contract; (f) KCI failed to pay subcontractors and suppliers as required by the Contract; and (g) KCI lost its required liability insurance for six days during construction. (Doc. 162.)

> a.   Contractual Right of the City to Terminate the Contract.

The Contract required the City to pay KCI $475,620.00 for completion of the Project, of which $447,386.87 was paid to KCI through periodic payments during the course of KCI's work on the Project.  The Contract provided that the City may, upon providing KCI with at least five days' written notice, terminate KCI's right to proceed on the Project if KCI violated the terms of the Contract.  (Doc. 1, p. 20.)  It also allowed the City to collect liquidated damages from Plaintiffs in the amount of $200 per day past the completion date that the Project was not complete.  (Doc. 156, pp.

50 & 52.)  As discussed in detail in the following sections, KCI repeatedly violated the terms of the Contract and the City had the right to terminate KCI's right to proceed.

> b.    KCI Did Not Complete the Project on Time.

The City argues that KCI "seriously overstepped the time for completion." (Doc. 162, p. 4.)  The original time for completion set out in the Contract was one hundred twenty days from the date of the Notice to Proceed issued by the City.  (Doc. 156, p. 2.)  The Contract made time of the essence and a material element of the agreement.  (Doc. 1, p. 19.)  The City issued three Change Orders to KCI, which had the effect of extending the time for completion to March 26, 2003, at no cost to Plaintiffs.  (Doc. 156, p. 23.)  Work on the Project was still not complete on March 26, 2003. As of late April 2003, KCI was still at work when it began to have problems with insurance coverage.  (Doc 156, p. 28.)  KCI was readying the Project for final inspection on May 8, 2003, at which time it expected to receive a punch list.  (Doc. 156, p. 30.)  At the end of May, the City received a letter from KCI's attorney requesting an additional fifteen days to complete the items on the punch list.  (Doc. 156, p. 33.)

Even though a Notice of Substantial Completion was issued by the architect, William Sims, on May 16, 2003, and a Certificate of Occupancy was issued by the City Inspections Department, the City contends that it still had the right to terminate the contract and withhold final payment.  When the Notice of Substantial Completion was issued, there were still items on the punch list that were required to be completed.  (Doc. 156, p. 31.)  KCI had not completed all of the items on the punch list when the City terminated the Contract in August of 2003.  Plaintiffs contend that the remaining items on the list were largely cosmetic.  (Doc. 167, p. 13.)  By the time KCI received the City's letter terminating the Contract on August 4, 2003, the Project was more than two hundred forty days past the original completion date and one hundred thirty one days past the completion time as extended by the three Change Orders requested by KCI.

Plaintiffs offer that in Alabama, substantial performance does not require exact performance of every detail of a contract, but rather performance of all important parts.  *See Bay City Construction Company, Inc. v. Henry Haynes*, 624 So. 2d 1031, 1034 (Ala. 1993).  Relying on the deposition testimony of Mr. Sims, the architect, Plaintiffs assert that KCI

reached substantial completion of the Project and is entitled to final payment.   However, Mr. Sims' testimony was simply that substantial completion had been reached and that this suspended KCI's construction time and liquidated damages, which the City did suspend for a short time. Mr. Sims also stated "that the contractor is still required to correct and complete all items on the final inspection punch list, as well as all other remaining requirements of the contract documents."  (Sims Depo., p. 148-49.)  The City replied to Plaintiffs' argument by asserting that "'substantial completion' is not tantamount to 'final completion' and final completion (along with many other contract closeout items) was never attained."  (Doc. 169, p. 4.)

The Contract in this case defined substantial completion,[4] and it is undisputed that a Notice of Substantial Completion was, in fact, issued to KCI.  However, as the City has noted, substantial completion in this case is not the same as final completion, and the notice did not relieve KCI of the obligation to perform its remaining duties enumerated in the Contract prior to being entitled to final payment.  Substantial completion under this contract is not equivalent to substantial performance under contract law.  Substantial completion under the Contract in this case is merely one step towards final completion of the Project as a whole, and meeting one step does not entitle KCI to payment as if it had completed the Project in its entirety.

_____

[4] The Contract states:

> "Substantial completion" shall be that degree of completion of the Project or a defined portion of the Project, as evidenced by the Engineer/Architect's written notice of Substantial Completion, sufficient to provide the City, at its discretion, the full-time use of the work or a defined portion of the work for the purposes for which it was intended . . . . Specifically, the issuance of a written notice of Substantial Completion shall not relieve the Contractor of his obligation to promptly remedy any omissions and latent or unnoticed defects in the Project . . . .

(Doc. 1, p. 38.)

c.      "As-Built" Drawings.

The Contract required KCI to submit "as-built" drawings of the Project unless the City waived its right to receive the drawings.  (Doc. 156, p. 55.) The City contends that since KCI never submitted such drawings, it has not met this condition for final payment.  (Doc. 162, p. 8.)  Plaintiffs respond that drawings were never submitted because the City terminated the Contract after KCI experienced difficulties in getting the subcontractors and its own work force back on the job site once the April 30, 2003, article was published in the *Tuscaloosa News*.  (Doc. 167, pp. 20-21.)  Even though KCI could not submit "as built" drawings since it did not complete the Project, it is clear that such drawings were a condition precedent to final payment.

d.      Advertising Completion of the Project.

Section 39-1-1(f) of the Alabama Code requires contractors on public works projects to advertise the completion of the project, and it prohibits final settlement of the amounts owed the contractor until proof of the advertisement is made.  Ala. Code § 39-1-1(f).  Notice of this statutory provision was included in the Contract.  (Jamison Depo., Exhibit 2, p. 52.) Plaintiffs do not contest the fact that KCI never advertised completion of

the Project, as it never completed work on it.  (Doc. 156, p. 40.)  However, failure to advertise means that the City is both statutorily and contractually prevented from paying KCI the balance of the payments owed under the Contract.

        e.     Plaintiffs' Obligation to Pay Subcontractors.

Even though Plaintiffs state that they dispute the City's proffered fact number twenty-eight, which states that it is KCI's responsibility to pay subcontractors and suppliers, it is clear that it was, in fact, KCI's responsibility to compensate those individuals.  (Doc. 156, pp. 3 & 61.)  The Contract states that KCI must pay its subcontractors and suppliers (Jamison Depo., Exhibit 2, pp. 34 & 60), and Plaintiffs admitted as much in their response to the motion for summary judgment filed by and granted to American Contractors Indemnity Company ("ACIC") in this case.  (Doc. 153, p. 2.)  Plaintiffs also admitted in their response to ACIC's motion that KCI failed to pay substantial sums owed to subcontractors and suppliers that ACIC was obligated to pay as surety for KCI.  *Id*.  By failing to pay subcontractors and suppliers, KCI failed to fulfill its contractual obligations to the City.

f.    KCI's Obligation to Carry Liability Insurance.

KCI was required to carry liability insurance for the duration of work on the Project.[5]  (Doc. 156, p. 3.)  On June 26, 2002, KCI supplied the City with certificates of the required insurance.  (Doc. 156, p. 5.)  On March 21, 2003, KCI was notified by its insurance company that its liability insurance would expire on April 24, 2003, and that the policy would not be renewed.[6] *Id.* at 25.  On April 23, 2003, the City notified KCI that it must cease all work on the Project until replacement liability insurance could be obtained, and Plaintiffs agree that it was proper for the City to shut down work by KCI

─────────────

[5]The Contract reads:

> The Contractor shall not commence work under this contract until he has obtained all insurance required by the Contract documents and such insurance has been accepted by the City, nor is the Contractor to allow any subcontractor to commence work on his subcontract until all similar insurance required of the subcontractor has been so obtained.
> ...
> The Contractor shall furnish the City with satisfactory proof of carriage of the insurance required herein, in the form of an insurance certificate or if the City elects in the form of a policy. Insurance shall be in a form satisfactory to the City.

(Doc. 1, pp. 31, 34.)

[6]The company that wrote KCI's liability insurance policy decided that it would no longer insure small contractors.

until the insurance could be obtained.  *Id.* at 28.  Plaintiffs did not meet

with GCM Insurance Agency in an attempt to obtain replacement coverage

until April 24, 2003.  *Id.* at 28.  This was on the same day KCI's previous

coverage expired and one month after the insurance company notified it

that its coverage would cease.  Even though GCM sent a letter to the City

on April 25, 2003, which stated that it may be able to provide a certificate

of liability insurance within the next three to five working days, on April 30,

GCM informed the City that it had "struck out" in an attempt to secure

liability insurance for KCI and that it would therefore not be able to supply

a certificate of liability insurance.  *Id.* at 29.

KCI was without liability insurance from April 24, 2003, through May

1, 2003.  The City Council voted to terminate the Contract with KCI, but

because KCI obtained replacement insurance after the vote but before the

City had acted to provide notice of termination, the notice was not sent at

that time.  (Doc. 156, p. 41.)  The decision to withhold sending notice of

termination at the time of the vote was an exercise of discretion on the part

of the administrators responsible for administering municipal contracts.  *Id.*

Even though the loss of liability insurance was not KCI's fault, the lack

of insurance was a material breach of the Contract.[7]

### 3.    Damages for Delay.

The City asserts that the "no damages for delay clause" in the

Contract precludes Plaintiffs' claims based upon the delays in construction

of the Project.  (Doc. 156, pp. 15-16.)  The Contract expressly prohibits any

claims for damages based upon delay.[8]  "No damages for delay clauses" are

valid and enforceable under Alabama law.  *See RaCON, Inc. v. Tuscaloosa*

*County*, 2006 WL 2089802 at *15-17 (Ala. July 28, 2006) (enforcing "no

damages for delay" clause in contract with Tuscaloosa County and finding

---

[7]Plaintiffs argue that even though KCI never requested a Change Order for the delay caused by the lapse of liability insurance, it was being charged liquidated damages for this time.  (Doc. 167, p. 21.)  However, the Change Order process was included in the Contract to account for delays such as this, and the imposition of liquidated damages by the City was intended to compensate it for delays that were KCI's fault.

[8]The Contract states in pertinent part:

> **Delay**: If the Contractor is delayed at any time in the progress of work by any of the following causes the Contractor may be entitled to a reasonable extension of time as determined by the City in which to complete the Project.  Provided, however, no such delay nor the extension of time it granted shall be grounds for a claim by the Contractor for damages or for additional cost, expenses, overhead or profit or other compensation . . . .

(Doc. 1, p. 19.)

that the record did not support the plaintiff's assertion that an exception

should apply to the clause).  Quoting a decision by the Mississippi Supreme

Court, *RaCON* sets out the following exceptions where a "no damages for

delay clause" may not be enforced:

> (1) was not intended or contemplated by the parties to be within the purview of the provision; (2) resulted from fraud, misrepresentation, or other bad faith on the part of one seeking the benefit of the provision; (3) has extended such an unreasonable length of time that the party delayed would have been justified in abandoning the contract; or (4) is not within the specifically enumerated delays to which the clause applies.

*RaCon*, 2006 WL 2089802 at *17 (quoting *Mississippi Transp. Comm'n v. SCI,*

*Inc.*, 717 So. 2d 332, 338 (Miss. 1998)).

    In this case, Plaintiff's contract claims are based upon the delays they

incurred in the construction of the Project, but there is no evidence that the

delays incurred were the fault of the City.  Moreover, the City granted each

of KCI's three requested Change Orders.  Plaintiffs have not shown that any

of the exceptions apply to the clause in the Contract in this case.

Therefore, Plaintiffs simply cannot assert a claim for damages based upon

the delays encountered on the Project.

4.   The City is Entitled to Summary Judgment as to Plaintiffs'
Claim for Breach of Contract.

The City had the contractual right to terminate the contract and impose liquidated damages, KCI overstepped the time for completion, KCI never submitted "as-built" drawings of the Project, KCI never advertised completion of the Project, KCI failed to pay subcontractors and suppliers, and KCI lost its liability insurance for six days during construction. Furthermore, the City granted each of KCI's requests for Change Orders to accommodate the delays in construction of the Project.  Plaintiffs cannot enforce the Contract against the City for final payment where KCI "has failed to perform [its] part of the agreement." *Gray*, 553 So. 2d at 82.  For these reasons, the City is entitled to summary judgment as to Plaintiffs' claim in Count One of the Amended Complaint for breach of contract.

B.   Defamation.

Plaintiffs have also alleged that the City defamed KCI and Mr. Kelley because it caused to be published an article in the *Tuscaloosa News* which stated that it had terminated its contract with KCI.  (Doc. 156, p. 73).  Even though the article does not say that the City *actually* terminated its contract

with KCI, just that it voted to do so, Plaintiffs allege that the article "was meant and intended to convey that [KCI] had abandoned the job, [and was] in material breach of [the Contract] causing economic injury to the 'City.'" *Id*. at 16.  Plaintiffs continue by asserting that the City, through its agent or employee, Helen Ball, "caused Tuscaloosa News [sic] to published [sic] the false and defamatory article knowing that it was false or with reckless disregard of its truth or falsity for the purpose of injuring Plaintiff and depriving him and his contracting company of the respect, confidence, and esteem peculiarly essential" to his profession.  *Id*. at 16.  According to Plaintiffs, because of the publication of the article and its "wide" circulation in the State of Alabama and throughout the United States, "Plaintiff has been greatly injured in his good name, and reputation in the community where Plaintiff conduct [sic] business and in the high regard, respect, confidence, and esteem the Plaintiff has previously enjoyed, and economic loss for damage to his business."  *Id*. at 17.  Upon publication of the article, Plaintiffs contend that KCI lost its crew and subcontractors, which led to "serious delays with completing the Freeman Pool Project." *Id*.

To establish a *prima facie* case of defamation in Alabama, a plaintiff must show: (1) a false and defamatory statement concerning the plaintiff; (2) an unprivileged communication of that statement to a third party; (3) fault which amounts to at least negligence on the part of the defendant; and (4) either actionability of the statement irrespective of special harm or the existence of special harm which was caused by publishing the statement. *See S.B. v. Saint James School*, 2006 WL 3530651, at *22 (Ala. December 8, 2006); *Wal-Mart Stores, Inc. v. Smitherman*, 872 So. 2d 833, 840 (Ala. 2003). The City's argument in support of its motion for summary judgment on this claim is fourfold: (1) both of the plaintiffs are "public figures," and, therefore, in order to prove defamation Plaintiffs must prove the City acted with "actual malice," "yet legally an Alabama municipality is incapable of acting with malice, and factually plaintiffs have not proffered any evidence of malice"; (2) the alleged statements were true; (3) the alleged statements attributed to the City are not defamatory as a matter of law; and (4) Plaintiffs have no evidence to sustain a claim for defamation under Count Three.  (Doc. 162, p. 21.)

1.    Public Figures.

A person has a First Amendment right to make statements, whether true or false, about a public figure without being guilty of defamation as long as such statements are not made with "actual malice." *Finebaum v. Coulter*, 854 So. 2d 1120, 1124 (Ala. 2003).  Both Plaintiffs and the City agree that Mr. Kelley and KCI are public figures for the purposes of claims for libel and slander.  (Docs. 156, p. 3; 167, p. 17.)  Their status as public figures requires that actual malice be proven in order for a *prima facie* case of defamation to be made.  *See, e.g., Curtis Pub. Co. v. Butts*, 388 U.S. 130, 134 (1967) (citing *New York Times Co. v. Sullivan*, 376 U.S. 254, 279-80 (1964)); *Deutcsh v. Birmingham Post*, 603 So. 2d 910, 911 (Ala. 1992).  In other words, the statement must have been made with knowledge that it was false or with reckless disregard of its truth or falsity.  *Id.*  It is not enough for a plaintiff to prove mere negligence where actual malice is required.  *See Finebaum*, 854 So. 2d at 1124.  The plaintiff must show that the author "entertained serious doubts as to the truth of his publication or [that he] acted with a high degree of awareness of probable falsity." *Finebaum*, 854 So. 2d at 1124 (internal quotations and citations omitted).

In Alabama, a municipality may only be held liable for torts involving claims of negligence.  Ala. Code § 11-47-190.  Therefore, an Alabama municipality is legally incapable of entertaining a malicious intent.  *See Franklin v. City of Huntsville*, 670 So. 2d 848, 850 (Ala. 1995) (affirming the dismissal of a malicious prosecution claim against the City of Huntsville because "a municipality cannot be deemed to act with malice.").

Plaintiff argues that Helen Ball made the statements during a city council meeting and that city officials were well aware of the City's policy of giving notice to a contractor before terminating a contract.  (Doc. 167, pp. 17-18.)  Plaintiffs continue by saying "[t]he statements made by Ms. Ball to the media that the City had terminated its contract with KCI[] was made with knowledge that the statements were false."  (Doc. 167, p. 18.)  Plaintiffs also aver that "Ms. Ball made subsequent statements to a third [] party that the statements were false."  *Id.*  To support their contention, Plaintiffs point to a letter by the Director of Operations for United Surety Associates, Inc. which informed Mr. Kelley of a conversation he had with Ms. Ball.  (Doc. 167, Exhibit 7.)  In the letter, the director wrote that Ms. Ball told him that KCI was never removed from the job, but instead was just

given a date on which it must have its insurance in place.  *Id*.  The letter also states that Ms. Ball told him that the City never voted on terminating the Contract - that it was simply placed on the docket to receive a vote.  *Id*. According to Plaintiffs, the statements caused KCI to lose all of its subcontractors and other laborers "which was a direct and proximate cause of KCI experiencing extreme delays in completing the punch list items necessary to fully wrap up its contract with the City."  *Id*.  The remainder of Plaintiffs' statements regarding KCI and Mr. Kelley's damage to their reputations, KCI's inability to obtain performance bonds, KCI's inability to obtain work because of the damage to its reputation, and the damage to KCI and Mr. Kelley's financial well being are unsupported by any evidence. (Doc. 167, p.19.)

    Plaintiffs have ignored the City's argument that a municipality cannot be held to have acted with actual malice.  Moreover, there is simply no evidence that the alleged defamatory statements were made with actual malice.  Plaintiffs have ignored the fact that Ms. Ball appears to have accurately reported the history of events leading to the City's vote. Plaintiffs have proffered no evidence to show that Ms. Ball, or any other

individual acting on behalf of the City, made statements "with knowledge that [they were] false or with reckless disregard of [their] truth or falsity." *Butts*, 388 U.S. at 134.

>   2.   Truth or Falsity of the Statements.

The City also argues that the statements attributed to it in the article are true by citing to the arguments it makes in support of its motion for summary judgment on Plaintiffs' claim for breach of contract. (Doc. 162, p. 24.) Truth is an absolute defense to any plaintiff's claim for defamation. *See, e.g., Smitherman*, 872 So. 2d at 840 (quoting *Foley v. State Farm Fire & Cas. Ins. Co.*, 491 So. 2d 934, 937 (Ala. 1986)). There is no evidence before the Court that the city council did not vote four to two in favor of terminating the Contract with KCI, that three extensions of time were not granted to KCI, or that the City did not decide to end its relationship with KCI after its liability insurance expired. The article does report Ms. Ball as saying that an auction would be held to finish the Project, which does not appear to be true. However, as stated in the previous section, there is no admissible evidence before the Court which shows that she made the statement with actual malice.

3.      Statements Not Defamatory as a Matter of Law.

Because the standards for libel and slander differ slightly under Alabama law, the City contends that only slander is at issue since it does not and cannot control what is published by the *Tuscaloosa News*.  (Doc. 162, p. 26.)  Libel involves the use of a form of print media to publish the allegedly defamatory statement, whereas slander requires an oral expression of the defamatory comment.  *See Blevins v. W.F. Barnes Corp.*, 768 So. 2d 386, 390 (Ala. Civ. App. 1999).  Words which are spoken to a reporter and then printed in the media are subject to a claim for slander and not libel.  *Id*. Plaintiffs allege that an employee of the City, Helen Ball, orally made certain statements regarding Plaintiffs that the *Tuscaloosa News* then published in written form.  Therefore, the allegedly defamatory statements must be analyzed under the standard for slander.  To constitute slander per se, "there must be an imputation of an indictable offense involving infamy or moral turpitude . . . ."  *Butler v. Town of Argo*, 871 So. 2d 1, 16-17 (Ala. 2003) (internal quotations and citations omitted).  The allegedly defamatory statements in the current case do not accuse Plaintiffs of any crime or moral turpitude, and, therefore, they cannot be termed slander per se.  However,

the City may still be liable for slander per quod if the claim is "founded on oral malicious defamation subjecting the plaintiff to disgrace, ridicule, odium, or contempt, though [they] fall short of imputing the commission of [a] crime or misdemeanor." *Id.* Plaintiffs must allege and prove special damages as an element of their cause of action. *Id.*

Whether a communication is defamatory is a question for the Court. *See Clark v. America's First Credit Union*, 585 So. 2d 1367, 1370 (Ala. 1991). Where the communication is not reasonably capable of a defamatory meaning, there is no issue of fact and summary judgment is appropriate. *Id.* In the case *sub judice*, the City employee is alleged to have stated that the City had extended the contract date three times, that the City terminated the contractual relationship after KCI failed to renew its liability insurance, that KCI had been off of the job for a week because its insurance was not renewed, that KCI was trying to renew its insurance at the time, and that she thought that the City would have an auction to finish the partially completed job. As discussed more fully in the section above regarding Plaintiffs' claims for breach of contract, the evidence supports the City's contention that each of these statements, with the exception of the last

statement, are true.  The City offers that the article's reference to an "auction" is a misunderstanding by the reporter as any contract to complete the job would have to be "bid," which involves a process that is admittedly similar to an auction.  (Doc. 162, p. 28.)  The City argues that in addition to being true, each of the above statements cannot be characterized as malicious, "and certainly are not the stuff of disgrace, ridicule, odium, or contempt."  *Id*. at 29.  Furthermore, the City notes that Plaintiffs have not proven the special damages required for claims of defamation per quod.  *Id*.  Plaintiffs have not alleged or provided the Court with evidence of damages representing a contracting job that it has lost as a result of Ms. Ball's allegedly defamatory statements.  In fact, Plaintiffs stipulated to the fact that KCI "has no evidence that the news article harmed its reputation except what it claims is evidence that the article was published and the attitude of City officials," and that KCI "was able to clear up its reputation . . . [and] no bonding company ever refused KCI a bond of any kind as a result of this case in Tuscaloosa or elsewhere."[9]  (Doc. 156, p. 41.)

---

[9]Norman Jamison testified at his deposition that KCI could not obtain a bond for a courthouse construction project, but he was unable to identify the project.  (Doc. 156, p. 41.)  However, Mr. Kelley testified that KCI did have a bond and did submit a bid on

Plaintiffs' statement of general damage to Mr. Kelley's reputation and unspecified economic losses are insufficient to constitute special damages. *Harrison v. Burger*, 103 So. 842 (Ala. 1925) (holding that counts alleging only general damage to reputation fail as stating only general damages while counts alleging that the plaintiff was unable to obtain credit at other stores sufficiently alleged special damages).

For the reasons stated in the preceding sections, the City is entitled to summary judgment as to Plaintiffs' claim for defamation.

C.     The City is Entitled to Summary Judgment as to its Counterclaim Against Plaintiffs.

The City has asserted a counterclaim against KCI for breach of contract.  (Doc. 44, p. 12.)  In support of its claim, the City adopted by reference its arguments in support of its motion for summary judgment as to Plaintiffs' breach of contract claim.  (Doc. 162, p. 31.) After determining that KCI was in breach of contract, did not complete the Project, and that the City had the right to terminate the Contract, the City hired H. H.

---

the courthouse project but did not receive the job because KCI did not submit the lowest bid.

Stephens Company ("Stephens") to complete the Project.  The City claims damages totaling $243,315.42.  *Id.* at 31.

The Court has already found that Plaintiffs did not complete the Project in the time required by the Contract, that KCI did not have the required liability insurance coverage for at least one week, that KCI did not pay its subcontractors, that KCI did not submit "as-built" drawings, that KCI never advertised final completion of the Project, and that the City acted within its authority when it terminated the Contract with KCI.  KCI repeatedly breached its contract with the City.  Therefore, the City is entitled to summary judgment on its claim for breach of contract against KCI.

In their response to the City's motion for summary judgment, Plaintiffs dispute the calculation of liquidated damages by the City.  They assert "that [KCI] should not be penalized for liquidated damages for delays due to lack of power on street necessary for KCI to complete the project."  (Doc. 167, p. 14.)  Plaintiffs also aver that the "work performed by Stephens consisted of items that had already passed inspection for KCI."  *Id.* at 22.

Even though there is no issue of material fact as to the counterclaim for breach of contract, there is a genuine issue of material fact as to the amount of damages.  Unless the parties can resolve the issue of damages otherwise, a jury trial will be held on March 19, 2007, at the federal courthouse in Tuscaloosa, Alabama.

V.    Conclusion.

For the reasons stated above, Defendant's Motion for Summary Judgment (Doc. 162) is due to be GRANTED as to Plaintiffs' claims and the Defendant's counterclaim, and a jury trial will be held to determine the issue of damages.

Done this 6th day of February 2007.

_____

L. SCOTT COOGLER
UNITED STATES DISTRICT JUDGE
124153